1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LECIA L. SHORTER, | Case No. CV 21-3347-CJC (KK) |
| Plaintiff, | |
| v. | FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| COUNTY OF LOS ANGELES, ET AL., | |
| Defendants. | |

This Final Report and Recommendation is submitted to the Honorable Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## SUMMARY OF RECOMMENDATION

Plaintiff Lecia L. Shorter ("Plaintiff"), proceeding pro se, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of her Fourth and Fourteenth Amendment rights and various state law claims. Defendants County of Los Angeles and Los Angeles County Sheriff's Department (collectively, "Moving Defendants") have now filed a Motion for Judgment on the Pleadings ("Motion")

1   arguing Plaintiff's claims are barred by res judicata and the applicable statute of

2   limitations.  For the reasons below, the Court recommends DENYING the Motion.

3                                              II.

4                          **RELEVANT BACKGROUND**[1]

5   **A.      AMADOR V. BACA, CV 10-1649-SVW (JEMx) ("AMADOR")**

6           On March 5, 2010, plaintiffs Mary Amador and Lorna Mallyon filed a putative

7   class action complaint against defendants County of Los Angeles; Los Angeles

8   County Sheriff Leroy Baca; deputy sheriffs Jones, Cornell, and Clark; and Doe

9   defendants 1 through 10.  Amador, dkt. 1.  Plaintiffs Amador and Mallyon alleged the

10  defendants implemented unconstitutional strip search policies at Century Regional

11  Detention Facility ("CRDF") in Lynwood, California.  Id.

12          On November 18, 2016, the court certified two distinct classes: (1) women who

13  were searched simultaneously in two lines directly facing each other from March 2008

14  to July 2011 at a CRDF bus bay and (2) women who were searched in two lines facing

15  opposite walls from July 2011 to January 1, 2015 at a CRDF bus bay.  Id., dkt. 327;

16  see also id., dkts. 321, 323.

17          On December 19, 2016, plaintiffs Amador, Alisa Battiste, Felice Cholewiak,

18  Evangelina Madrid, Myeshia Williams, and Nancy Briseño (collectively, "class

19  plaintiffs") filed a Fourth Amended Complaint pursuant to Section 1983 against

---

20

21  [1]      A court "may take judicial notice of matters of public record," including
    "proceedings and filings" in other cases and "in other courts, both within and without

22  the federal judicial system, if those proceedings have a direct relation to matters at
    issue." Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (citations and

23  internal quotation marks omitted); United States ex rel. Robinson Rancheria Citizens
    Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (citations and internal

24  quotation marks omitted).  The Court, therefore, takes sua sponte notice of the
    documents in Amador v. Baca, CV 10-1649-SVW (JEMx) and Shorter v. Baca, CV
    12-7337-DOC (GJS).

25
            In addition to select documents in Amador v. Baca, CV 10-1649-SVW (JEMx)

26  and Shorter v. Baca, CV 12-7337-DOC (GJS), the Moving Defendants request the
    Court take judicial notice of documents in other unrelated cases. Dkts. 16, 27.  While

27  the Court may take judicial notice of the existence of these unrelated court
    documents, the Court will not take judicial notice of such documents for the truth of

28  the matter asserted therein.  See Mejia v. EMC Mortg. Corp., CV 09-4701-CAS (Ex),
    2012 WL 367364, at *6 n. 5 (C.D. Cal. Feb. 2, 2012) (citation omitted).

                                              2

1  defendants County of Los Angeles; Los Angeles County Sheriff Baca; deputy sheriffs
2  Jones, Burns, Cornell, Cooper, Clark, Cruz, and Lee; and Doe defendants 1 through
3  10 (collectively, "Amador Defendants"). Id., dkt. 334. The class plaintiffs alleged
4  degrading strip and body cavity searches violated their Fourth, Eighth, and
5  Fourteenth Amendment rights and their corollaries under the California Constitution.
6  Id. The class plaintiffs further alleged the searches took place in group settings and in
7  an outdoor area used to park buses at CRDF. Id. at 5-17.

8          On June 7, 2017, the court granted summary judgment in the class plaintiffs'
9  favor on their Fourth Amendment claim against defendant County of Los Angeles.
10 Id., dkt. 361. The court reached this conclusion "based on the invasiveness of the
11 search (i.e., use of the 'labia lift' despite less intrusive alternatives) . . . , the group
12 setting of the search, in which inmates could not avoid viewing each other, the lack of
13 privacy within that group setting, and—most importantly—the lack of a penological
14 purpose or informed justification for not providing individualized privacy." Id.

15         On March 6, 2020, Plaintiff filed a notice of her intent to opt-out of settlement
16 proceeds but not class membership status. Id., dkt. 429.

17         On August 11, 2020, the court approved the class plaintiffs' motion for final
18 approval of a class action settlement and identified Plaintiff as both an "opt-out" and
19 an objector. Id., dkt. 463; see also id., dkt. 465.

20 **B.     SHORTER V. BACA, CV 12-7337-DOC (GJS) ("SHORTER I")**

21         On August 27, 2012, Plaintiff filed a civil rights complaint arising out of her
22 alleged mistreatment while she was incarcerated as a pre-trial detainee from
23 November 15, 2011 to December 17, 2011 at CRDF. Shorter I, dkt. 3.

24         On November 1, 2012, Plaintiff filed a First Amended Complaint ("FAC")
25 against defendants County of Los Angeles, Los Angeles County Sheriff Baca, and
26 deputy sheriffs Jacqueline Ortiz and Alejandra Avalos (collectively, "Shorter I

27

28

3

1   Defendants").[2]  Id., dkt. 8.  Among other things, Plaintiff alleged during a thirty-two-

2   day period at CRDF, the Shorter I Defendants conducted invasive searches.  Id. at 16-

3   18.  Specifically, Plaintiff alleged on multiple occasions, deputies had taken Plaintiff to

4   a cell, conducted a strip search, and subsequently chained Plaintiff to the door of her

5   cell without providing Plaintiff's clothes.  Id.  Plaintiff alleged violations of her First,

6   Fourth, Eighth, and Fourteenth Amendment rights and state law claims for negligent

7   and intentional infliction of emotional distress, defamation, assault and battery,

8   negligent hiring and supervision, and negligence.  Id. at 7-31.

9           On April 10, 2019, following a jury trial, the jury issued a verdict in favor of the

10  Shorter I Defendants.  Id., dkts. 336, 338.  With respect to Plaintiff's unlawful search

11  claim, the jury found the Shorter I Defendants did not violate Plaintiff's constitutional

12  rights.  Id., dkt. 338.  The court, therefore, entered Judgment dismissing the action on

13  the merits.  Id., dkt. 345.

14          On May 8, 2019, Plaintiff filed a Renewed Motion for Judgment as a Matter of

15  Law, or in the Alternative, for a New Trial ("JMOL Motion").  Id., dkt. 350.  On

16  September 13, 2019, the court granted in part and denied in part Plaintiff's JMOL

17  Motion.  Id., dkt. 369.  With respect to Plaintiff's unlawful search claim, the court

18  denied the JMOL Motion and, thus, upheld the jury's verdict in favor of the Shorter I

19  Defendants.[3]  Id.

20          On October 8, 2019, Plaintiff filed a notice of appeal.  Id., dkt. 374.  On

21  October 26, 2021, the Ninth Circuit reversed in part and affirmed in part Plaintiff's

22

23  [2]      Plaintiff also named defendants Los Angeles County Board of Supervisors
    Gloria Molina, Mark Ridley-Thomas, Zev Yaroslavsky, Don Knabe, and Michael
24  Antonovich in their official capacity.  Shorter I, dkt. 8.

25  [3]      The court also (a) denied Plaintiff's JMOL Motion with respect to her claims
    for improper classification without due process, inadequate medical care, and
26  conditions of confinement claim regarding meals and shower, and (b) granted
    Plaintiff's JMOL Motion with respect to her conditions of confinement claim
27  regarding recreation.  Shorter I, dkt. 369 at 27-28.  The court further denied in part
    Plaintiff's request for a new trial "due to clear weight of the evidence, defense counsel
28  conduct, and evidentiary rulings," but conditionally granted a new trial on her
    conditions of confinement claim regarding recreation time.  Id. at 28.

4

1   JMOL Motion.  <u>Id.</u>, dkt. 408.  With respect to the denial of Plaintiff's JMOL Motion

2   on her unlawful search claim, the Ninth Circuit reversed under de novo review, held

3   Plaintiff was entitled to judgment as a matter of law, and remanded to the district

4   court for adjudication of damages.[4]  <u>Id.</u> at 2-3, 6-7.  The Ninth Circuit reasoned,

5   "CRDF failed to provide any penological justification for leaving inmates unclothed

6   and unchained for any period of time after their clothes had already been searched"

7   and "the jail had an alternative, less abusive means of obtaining contraband from

8   inmates[.]"  <u>Id.</u> at 2-3.

9   **C.   <u>SHORTER V. COUNTY OF LOS ANGELES</u>, CV 21-3347-CJC (KK)**

10       **("INSTANT ACTION")**

11       On April 17, 2021, Plaintiff filed the instant Complaint pursuant to Section

12   1983 against defendants County of Los Angeles, Los Angeles County Sheriff's

13   Department, and Does 1 through 10.  Dkt. 1.  Plaintiff states the action is "brought in

14   direct relation to <u>Amador</u>," a class action "wherein a summary judgment <u>Monell</u>

15   liability determination under the Fourth Amendment as to [] Plaintiff class was

16   entered on June 6, 2017."  <u>Id.</u> at 3.  Plaintiff explains she opted out of the <u>Amador</u>

17   class plaintiffs' settlement agreement and filed the Instant Action "solely on the issue

18   of damages."  <u>Id.</u> at 4.

19       Plaintiff alleges while she was a pre-trial detainee at CRDF, she was "repeatedly

20   subjected to extremely humiliating and degrading group and individual strip and body

21   cavity searches in 2010, 2011, and 2013[.]"  <u>Id.</u> at 2.  Plaintiff alleges she was searched

22   alongside other women in groups as large as fifty inmates and in an outdoor area used

23   to park buses.  <u>Id.</u>  Plaintiff alleges the searches violated her Fourth, Eighth, and

24

25   ───────────────────
    [4]    With regard to Plaintiff's inadequate sanitation claim, the Ninth Circuit also
26   found the district court erred in denying Plaintiff's JMOL Motion, Plaintiff was
    entitled to judgment as a matter of law, and remanded to the district court for
27   adjudication of damages.  Dkt. 408 at 3, 6.  The Ninth Circuit affirmed the denial of
    Plaintiff's JMOL Motion as to her deprivation of meals, inadequate medical care, and
    improper classification claims.  <u>Id.</u> at 4-5.  Finally, the Ninth Circuit found the district
    court did not abuse its discretion in denying Plaintiff's motion for a new trial.  <u>Id.</u> at 6-
28   7.

1   Fourteenth Amendment rights and state law claims pursuant to the Unruh Civil

2   Rights Act, Cal. Civ. Code § 52.1, and Article 1, §§ 1, 7, and 13 of the California

3   Constitution.  Id. at 10-15.

4         On June 7, 2021, Moving Defendants filed an Answer to the Complaint.  Dkt.

5   11.

6         On September 14, 2021, Moving Defendants filed the instant Motion on the

7   grounds Plaintiff's claims are barred by res judicata and the applicable statute of

8   limitations.  Dkt. 15.  On September 23, 2021, Plaintiff filed an Opposition to the

9   Motion.  Dkt. 25.  On September 30, 2021, Moving Defendants filed a Reply.  Dkt.

10  26.

11        On October 27, 2021, the Court issued a Report and Recommendation

12  recommending the instant Motion be denied.  Dkt. 30.  On November 24, 2021,

13  Moving Defendants filed Objections to the Report and Recommendation.  Dkt. 34.

14  On December 8, 2021, Plaintiff filed a Response.  Dkt. 35.

15        The Court issues the instant Final Report and Recommendation addressing

16  Moving Defendants' Objections in Section IV.A.2. and footnotes 5 and 8 below.

17                                  **III.**

18                          **LEGAL STANDARD**

19        Under Rule 12(c) of the Federal Rules of Civil Procedure ("Rule 12(c)"), a party

20  may move for judgment on the pleadings.  Hishon v. King & Spalding, 467 U.S. 69,

21  73 (1984); Dworkin v. Hustler Mag., 867 F.2d 1188, 1192 (9th Cir 1989).  A Rule

22  12(c) motion is properly brought "after the pleadings are closed—but early enough

23  not to delay trial."  FED. R. CIV. P. 12(c); Dworkin, 867 F.2d at 1192.

24        A court may grant judgment on the pleadings "when, taking all allegations in

25  the pleading as true, the moving party is entitled to judgment as a matter of law."

26  McGann v. Ernst & Young, 102 F.3d 390, 392 (9th Cir. 1996).  A court must assume

27  the truthfulness of all material facts alleged and construe all inferences reasonably to

28  be drawn from the facts in favor of the responding party.  Gen. Conf. Corp. of

1  Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church, 887 F.2d
2  228, 230 (9th Cir. 1989).  "It is well-settled that materials properly attached as exhibits
3  to the complaint and matters that are subject to judicial notice may . . . be considered
4  in evaluating a motion for judgment on the pleadings."  Shame On You Prod., Inc. v.
5  Elizabeth Banks, 120 F. Supp. 3d 1123, 1144 (C.D. Cal. 2015) (citations omitted).

6                                              **IV.**

7                                        **DISCUSSION**

8  **A.    MOVING DEFENDANTS FAIL TO DEMONSTRATE RES**
9  **         JUDICATA BARS THE INSTANT ACTION**

10           **1.    Applicable Law**

11           "Res judicata, also known as claim preclusion, bars litigation in a subsequent
12  action of any claims that were raised or could have been raised in the prior action."
13  Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (quoting
14  W. Radio Servs. Co. v. Glickman, 123 F.3d 1189, 1192 (9th Cir. 1997)).  Res judicata
15  applies to bar an action when there is: (1) "identity or privity between parties"; (2) "an
16  identity of claims"; and (3) "a final judgment on the merits."  Stewart v. U.S. Bancorp,
17  297 F.3d 953, 956 (9th Cir. 2002).  The Supreme Court has made clear there is no
18  "principle of law or equity which sanctions the rejection by a federal court of the
19  salutary principle of res judicata."  Federated Dep't Stores, Inc. v. Moitie, 452 U.S.
20  394, 401 (1981).  The party asserting res judicata "must carry the burden of
21  establishing all necessary elements."  Taylor v. Sturgell, 553 U.S. 880, 907 (2008)
22  (quoting 18 C. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 4405, at 83
23  (2d ed. 2002)).

24           **2.    Analysis**

25           Here, neither party disputes the first element of res judicata – identity or privity
26  between parties – has been satisfied because there is identity or privity between the
27  parties in the Instant Action and those in Shorter I.  In both actions, Plaintiff sues
28  defendants County of Los Angeles and Los Angeles County Sheriff's Department.  It

                                              7

1   is, however, unclear whether the third element of res judicata – a final judgment on

2   the merits – has been satisfied in light of the Ninth Circuit decision reversing the

3   denial of Plaintiff's JMOL Motion on her unlawful search claim in Shorter I.  See

4   Shorter I, dkt. 408.  Nonetheless, as discussed below, because it is clear the second

5   element of res judicata – an identity of claims –  has not been met, res judicata does

6   not preclude the Instant Action.[5]

7           The second element of res judicata is whether there is an "identity of claims"

8   between the present dispute and the prior case.  Stewart, 297 F.3d at 956.  In

9   considering whether a present dispute concerns the same claims as a prior case, the

10   Ninth Circuit considers:

11           (1) Whether rights or interests established in the prior judgment would

12           be destroyed or impaired by prosecution of the second action; (2)

13           whether substantially the same evidence is presented in the two actions;

14           (3) whether the two suits involve infringement of the same right; and (4)

15           whether the two suits arise out of the same transactional nucleus of

16           facts.  The last of these criteria is the most important.

17   Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1052 (9th Cir. 2005) (quoting

18   Costantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

19           "Whether two suits arise out of the 'same transactional nucleus' depends upon

20   'whether they are related to the same set of facts and whether they could conveniently

21   be tried together.'"  ProShipLine Inc. v. Aspen Infrastructures Ltd., 609 F.3d 960, 968

22   (9th Cir. 2010) (quoting W. Sys., Inc. v. Ulloa, 958 F.2d 864, 871 (9th Cir. 1992), as

23   amended (June 23, 1992)).  "In most cases, 'the inquiry into the "same transactional

---

24   [5]      In their Objections, Moving Defendants argue "[Plaintiff] cannot offensively
25   use collateral estoppel after opting out of the class."  Dkt. 34 at 10.  The issue of
     whether Plaintiff can offensively use collateral estoppel, however, is immaterial at this
26   stage of the proceedings and does not dispose of Plaintiff's claims.  See generally
     Grisham v. Philip Morris, Inc., 670 F. Supp. 2d 1014, 1028-29 (C.D. Cal. 2009)
27   (stating the legal standard for non-mutual offensive issue preclusion); Premier Elec.
     Const. Co. v. Nat'l Elec. Contractors Ass'n, Inc., 814 F.2d 358, 362 (7th Cir. 1987)
28   ("Someone who opted out could take his chances separately, but the separate suit
     would proceed as if the class action had never been filed.").

1   nucleus of facts" is essentially the same as whether the claim could have been brought
2   in the first action.'" Turtle Island Restoration Network v. U.S. Dep't of State, 673
3   F.3d 914, 918 (9th Cir. 2012) (quoting United States v. Liquidators of Eur. Fed. Credit
4   Bank, 630 F.3d 1139, 1151 (9th Cir. 2011)).  "[W]here claims arise from the same
5   factual circumstances, a plaintiff must bring all related claims together or forfeit the
6   opportunity to bring any omitted claim in a subsequent proceeding." Id.

7          Here, the complaints in Shorter I and the Instant Action both involve Plaintiff
8   and allege violations of Plaintiff's constitutional rights arising from strip and visual
9   body cavity searches.  However, an identity of claims does not exist because although
10  the searches alleged in Shorter I and the Instant Action took place at CRDF, the strip
11  searches in the Instant Action were conducted in a different time, place, and manner.
12  In Shorter I, Plaintiff alleged on multiple occasions during a thirty-two-day period in
13  2011, the deputies had conducted a strip search of Plaintiff in a cell and chained
14  Plaintiff's right hand to the door of her cell without providing her clothes.  Shorter I,
15  dkt. 8.  In contrast, in the Instant Action, Plaintiff alleges on multiple occasions in
16  2010, 2011, and 2013, she was searched alongside other women in groups as large as
17  fifty inmates and in an outdoor area used to park buses, as alleged in Amador.  Dkt. 1.
18  The difference in the time, place, and manner in which the strip and visual body
19  searches were conducted in Shorter I and the Instant Action shows the two suits arise
20  out of a different transactional nucleus of facts.  See Fund for Animals, Inc. v. Lujan,
21  962 F.2d 1391, 1399 (9th Cir.1992) (holding the defense of res judicata did not apply
22  because the present action challenged conduct that was different in substance from
23  the conduct challenged in the previous action).

24         The Court, thus, finds an identity of claims does not exist between Shorter I
25  and the Instant Action.  Accordingly, Moving Defendants fail to demonstrate res
26  judicata bars the Instant Action.
27  ///
28  ///

**B.    MOVING DEFENDANTS FAIL TO SHOW THE STATUTE OF LIMITATIONS BARS THE INSTANT ACTION**

**1.    Applicable Law**

The applicable statute of limitations for Section 1983 claims brought in California is two years.  See Wallace v. Kato, 549 U.S. 384, 387 (2007) (holding the state personal injury limitation statute governs Section 1983 claims); Cal. Code Civ. Proc. § 335.1 (noting a two-year personal injury statute of limitation).  A Section 1983 "cause of action accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action.  Thus, '[a]n action ordinarily accrues on the date of the injury.'"  Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015), cert. denied, 137 S. Ct. 109, reh'g denied, 137 S. Ct. 489 (2016) (citing Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996)); see also Wallace, 549 U.S. at 388 (holding federal law determines when a cause of action accrues and when the statute of limitations begins to run for a Section 1983 claim).  "In a traditional Fourth Amendment case, the plaintiff is placed on constructive notice of the illegal conduct when the search and seizure takes place." Klein v. City of Beverly Hills, 865 F.3d 1276, 1279 (9th Cir. 2017).

The commencement of a class action, however, tolls the applicable statute of limitations as to all members of the class.  Tosti v. City of Los Angeles, 754 F.2d 1485, 1488 (9th Cir. 1985) (citation omitted).  "When certification has been granted, the statute begins running anew from the date when the class member exercises the right to opt out because before this time, the class member is deemed to be actively prosecuting her rights."  Id.

**2.    Analysis**

Plaintiff's Section 1983 causes of action arise from the "humiliating and degrading group and individual strip and body cavity searches" she experienced in 2010, 2011, and 2013.  Dkt. 1 at 2.  Assuming Plaintiff's claims accrued on the date of the strip and body cavity searches in 2010, 2011, and 2013, the statute of limitations as to Plaintiff's Section 1983 claims, absent any tolling, would have expired two years

1   after each search.  See Lopez v. City of Santa Ana, No. CV 14-01369 SVW (RAO),

2   2015 WL 9918408, at *3 (C.D. Cal. Dec. 21, 2015), report and recommendation

3   adopted, No. CV 14-01369-SVW (RAO), 2016 WL 344501 (C.D. Cal. Jan. 26, 2016),

4   aff'd, 698 F. App'x 401 (9th Cir. 2017) ("[E]ach discrete act gives rise to a separate

5   constitutional claim for purposes of the statute of limitations." (citing Carpinteria

6   Valley Farms, Ltd. v. County of Santa Barbara, 344 F.3d 822, 829 (9th Cir. 2003)).

7        The commencement of the Amador class action,[6] however, tolled the statute of

8   limitations from the date the action was filed, March 5, 2010, until the date Plaintiff

9   opted out, March 6, 2020.[7]  See Tosti, 754 F.2d at 1488.  Plaintiff subsequently filed

10   the Instant Action on April 17, 2021, approximately a year after she opted out of

11   Amador.  The Instant Action was, thus, filed within the two-year statute of

12   limitations.  See dkt. 1.

13        Accordingly, Moving Defendants fail to show the statute of limitations bars the

14   Instant Action.[8]

15   ///

16   ///

17   ///

18   
19   [6]    Notably, Moving Defendants fail to address the impact a class action has on the applicable statute of limitations.  To the extent Moving Defendants might seek to challenge whether the claims in the Instant Action were addressed in Amador, Plaintiff specifically states the action is "brought in direct relation to Amador," dkt. 1 at 3.  Moreover, both cases are premised on claims that inmates at CRDF were subjected to unlawful group searches in outdoor areas used to park buses.  See id. at 2-3 ("The unconstitutional group searches occurred in an outdoor area used to park buses."); Amador, dkt. 334 at 5-11 (alleging searches took place in group settings and in an outdoor area used to park buses at CRDF).

23   [7]    Moving Defendants incorrectly state Plaintiff opted out on March 6, 2019, dkt. 26 at 2.

25   [8]    While it is not entirely clear from the Complaint whether the Amador class action involved every search alleged in the Instant Action, Moving Defendants have not differentiated the searches alleged in the Instant Action.  To the extent Moving Defendants now argue the reference in the Complaint to a 2013 individual search was not part of the Amador class action, dkt. 34 at 20, Plaintiff clarifies in her Response that the Instant Action is solely to pursue the group claims from Amador, dkt. 35 at 2.  Moreover, the Court declines to consider new arguments raised for the first time in objections.  See United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000), cert. denied, 534 U.S. 831 (2001).

## V.

## **RECOMMENDATION**

IT IS THEREFORE RECOMMENDED that the Court issue an Order: (1) accepting this Final Report and Recommendation; and (2) DENYING defendants County of Los Angeles and Los Angeles County Sheriff's Department's Motion for Judgment on the Pleadings.

Dated: December 20, 2021

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge